UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY LEE JANIS,

                        Plaintiff,              Civil Action No. 14-10491
                                                          Honorable Lawrence P. Zatkoff
                                                          Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                        Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 11]

Plaintiff Larry Lee Janis ("Janis") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 11], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Janis is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [11] be GRANTED, Janis' Motion for Summary Judgment [9] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.      REPORT

### A.      Procedural History

On July 27, 2011, Janis filed an application for DIB, alleging a disability onset date of

April 15, 2009. (Tr. 115-16). This application was denied initially on October 3, 2011. (Tr. 67-70). Janis filed a timely request for an administrative hearing, which was held on August 28, 2012, before ALJ John Rabaut. (Tr. 32-52). Janis, who was represented by attorney Antoine Houle, testified at the hearing, as did vocational expert Diane Regan. (*Id.*). On September 17, 2012, the ALJ issued a written decision finding that Janis is not disabled. (Tr. 16-27). On December 5, 2013, the Appeals Council denied review. (Tr. 1-5). Janis filed for judicial review of the final decision on February 3, 2014. (Doc. #1).

### B.    Background

#### 1.    *Janis' Reports and Testimony*

At the time of the August 2012 administrative hearing, Janis was 59 years old. (Tr. 138). He had lived with his parents his entire life. (Tr. 36). He graduated from high school in 1971 and completed an electronics program in 2011. (Tr. 143). From 1999 to 2009, Janis worked as a telephone solicitor for AT&T. (Tr. 36-37). He claims he had difficulty with this job, however, and testified that the "only reason [he] wasn't fired is because the union kept getting [him] back." (Tr. 37). At some point, his job duties changed, requiring him to multitask, and when he could not perform, he was fired. (Tr. 37-39).

Janis testified that he suffers from an anxiety disorder, which prevents him from working. (Tr. 40, 145). He also suffers from attention deficit hyperactivity disorder ("ADHD") and depression. (Tr. 142). He has difficulty getting organized, staying on task, and multitasking. (Tr. 40). Janis testified that, on a typical day, he washes dishes, goes for walks, and watches television. (Tr. 42, 167). He is able to drive and go grocery shopping with his mother. (Tr. 41, 169). Janis cooks frozen dinners for himself and his parents. (Tr. 41, 168). Janis indicated that he is a "loner" who does not have many interpersonal relationships, but he does attend church

with a friend every Sunday.  (Tr. 40, 43).  He has no problem attending to his own personal care needs, but he needs reminders to take medication.  (Tr. 167-68).  He reported that he is able to pay bills, count change, and handle a checking and savings account.[1]  (Tr. 169).  He gets angry easily and has difficulty getting along with others.  (Tr. 171).  He has difficulty following both written and spoken instructions, can be argumentative, and has been fired from jobs because of problems getting along with people.  (Tr. 171-72).

### 2.    Medical Evidence

The Court has thoroughly reviewed Janis' medical record.  In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.    Vocational Expert's Testimony

Diane Regan testified as an independent vocational expert ("VE") at the administrative hearing.  (Tr. 46-50).  The VE characterized Janis' past relevant work as an order taker as semi-skilled in nature (per the Dictionary of Occupational Titles) and performed at the sedentary exertional level.  (Tr. 25, 47).  Then, the ALJ asked the VE to imagine a claimant of Janis' age, education, and work experience, who could perform work at all exertional levels, with the following nonexertional limitations:  limited to simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production requirements and involving only simple work-related decisions with few, if any, workplace changes; no chaining tasks; and only occasional interaction with co-workers and the public.  (Tr. 48).  The VE testified that the hypothetical individual would not be capable of performing Janis' past relevant work.  (Id.).  However, the

---

[1] In a third party function report dated August 7, 2011, Janis' mother, Georgina, generally corroborated Janis' statements.  (Tr. 150-57).  However, she specifically indicated that Janis "[h]as always had trouble handling money."  (Tr. 154).

VE testified that the hypothetical individual would be capable of working in the jobs of sorter

(4,000 jobs in southeast Michigan), packer (6,000 jobs), and cleaner (5,000 jobs).  (Tr. 48-49).

### C.    Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be

determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity,
> has a severe impairment that is expected to last for at least twelve months,
> and the severe impairment meets or equals one of the impairments listed in
> the regulations, the claimant is conclusively presumed to be disabled
> regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work,
> benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and work
> experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing

20 C.F.R. §§404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir.

2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis

4

reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D.    The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Janis is not disabled under the Act.  At Step One, the ALJ found that Janis has not engaged in substantial gainful activity since April 15, 2009, the alleged onset date.  (Tr. 18).  At Step Two, the ALJ found that Janis has the severe impairments of bipolar disorder, ADHD, and panic disorder.  (Tr. 19).  At Step Three, the ALJ found that Janis' impairments do not meet or medically equal a listed impairment.  (Tr. 19-21).

The ALJ then assessed Janis' residual functional capacity ("RFC"), concluding that he is capable of performing work at all exertional levels, but with the following nonexertional limitations:  limited to simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions, and with few, if any, workplace changes; occasional interaction with the public; and occasional interaction with coworkers (but no tandem tasks).  (Tr. 21-25).

At Step Four, the ALJ determined that Janis is unable to perform his past relevant work as an order taker.  (Tr. 25).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Janis is capable of performing a significant number of jobs that exist in the national economy.  (Tr. 26).  As a result, the ALJ concluded that Janis is not disabled under the Act.  (Tr. 26-27).

**E.    Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all

6

evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."   *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F.   Analysis

Janis' sole argument before this Court is that the ALJ erred at Step Three in concluding that his impairments, whether considered alone or in combination, do not meet the requirements of Listing 12.04(C) ("Affective Disorders").   (Doc. #9 at 9-15).   As set forth in greater detail below, this argument is without merit.

At Step Three of the sequential evaluation process, Janis bears the burden of proving that his impairments meet or medically equal a particular listing.   *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987).   The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. §404.1525(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled.   *See Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165, at *2 (6th Cir. Apr. 1, 2011).   "A claimant must satisfy all of the criteria to meet the listing."   *Rabbers,* 582 F.3d at 653.

Listing 12.04, which is at issue in this case, provides, in relevant part:

> 12.04 Affective disorders:   Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.   Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

7

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.[2]

\*       \*       \*

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR Pt. 404, Subpt. P, Appx. 1, §12.04.

In this case, the ALJ explicitly considered Listing 12.04(C) in his decision, concluding that Janis' impairments fail to satisfy its criteria. (Tr. 20-21). Specifically, the ALJ reasoned:

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant's condition does not meet the "paragraph C" criteria for listings 12.02 or 12.04 because the record does not show a medically documented history of a chronic affective or organic disorder of at least two years' duration that has caused more than a minimal limitation of the ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support. Furthermore, the medical evidence of record does not demonstrate at least one of the following: repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or a current history of one or more years inability to

---

[2] In this case, the ALJ specifically found that the "paragraph B" criteria were not satisfied. (Tr. 19-20). Janis does not challenge this conclusion. Accordingly, the Court will consider only whether the ALJ's conclusion that Janis does not satisfy the "paragraph C" criteria is supported by substantial evidence.

8

function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.[3]

(*Id.*).

The only issue Janis presents for the Court's consideration is whether Janis experienced "repeated episodes of decompensation, each of extended duration," sufficient to satisfy the criteria of Listing 12.04(C).[4]   Episodes of decompensation are described as follows in the applicable regulations:

> *Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.   Episodes of decompensation may be demonstrated by an exacerbation in symptoms that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records

---

[3] Janis does not argue that he is unable to function outside a highly supportive living arrangement.   Moreover, although Janis asserts that he has always resided with his now elderly parents, the ALJ correctly noted evidence in the record that Janis was providing care for them. (Tr. 20 (citing Tr. 261-62), 23).   Janis also reported to his doctor that he was "independent" in virtually all of the categories of "Daily Living Skills" categories, including, eating, dressing, toileting, walking, transportation, laundry, cooking, cleaning, leisure/recreation, and "community access."   (Tr. 262).   When asked what assistance he receives, he simply stated that his parents "provide housing," and that he has a "best friend [who] is emotionally supportive."   (*Id.*).

[4] Despite the ALJ's conclusion to the contrary, the Commissioner does not seriously challenge Janis' contention that he established the initial requirements of the "paragraph C" criteria. Specifically, the medical evidence reveals that Janis had a medically documented history of a chronic affective disorder (bipolar disorder) of a least two years' duration.   Janis was hospitalized for his mental illness for three weeks in November 2005 and fifteen more days in December 2005, and received ongoing psychiatric treatment, medication, and therapy for his bipolar disorder from 2009 through the date of the hearing (in August 2012).   (Tr. 202-03, 208, 210-18, 225-39, 260-98, 306-45).   These same medical records demonstrate that Janis had symptoms or signs attenuated by medication or psychosocial support during the relevant time period.   (*Id.*).   Moreover, the ALJ found that Janis' mental impairments (bipolar disorder, ADHD, and panic disorder) caused more than a minimal impact on his capacity for work activities.   (Tr. 19).   Thus, the ALJ's conclusion that Janis does not meet this initial portion of the "paragraph C" criteria is not supported by substantial evidence.   As set forth below, however, this error is harmless, because Janis has not satisfied the remainder of the "paragraph C" criteria.

showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 CFR Pt. 404, Subpt. P, Appx. 1, §12.00(C)(4).

Here, Janis argues that he meets the criteria of Listing 12.04(C) because "[t]he record indicates that from November 8, 2011,[5] through the date of the hearing, [he] suffered a single and sustained 'episode of decompensation.'" (Doc. #9 at 12). Specifically, Janis asserts that, on that date, he "gave a history to his psychiatrist of having significant panic attacks over the weekend," and his psychiatrist then increased his medication. (*Id.* at 11 (citing Tr. 318)). According to Janis, this "increase in medication is substantial evidence of an 'episode of decompensation' that continued until the date of the hearing with the administrative law judge," thus satisfying the requirements of Listing 12.04(C). (*Id.*).

A review of the medical report from November 8, 2011, however, belies Janis' assertion that a sustained episode of decompensation began on that date. At that visit, Janis reported that he had experienced some panic attacks since his last meeting with Dr. John Mitchell, D.O.

---

[5] Apparently Janis concedes that he was not disabled as of his alleged onset date, April 15, 2009. (Doc. #9 at 11) ("It is our position that the plaintiff met the listing beginning November 8, 2011."). The Court also notes that the medical records leading up to the November 8, 2011 date identified by Janis provide substantial evidence in support of the ALJ's conclusion that he was not disabled before this time. (*E.g.*, Tr. 312 (on August 16, 2011, Janis indicated that he "feels he has better focus with [a recent] med change"); 313 (moving Janis to bi-weekly appointments "as he appears to have stabilized")).

10

(which was two months earlier, on September 9, 2011). (Tr. 314, 318). He also reported having some "pretty significant" panic attacks over the past weekend, but he denied feeling depressed and stated that he was able to do some "basic day to day things such as shopping." (Tr. 318). Dr. Mitchell then observed that Janis' eye contact was good, his mood was reported as okay, he was cooperative, he denied suicidal ideation, there were no gross psychotic features, his thought processes were generally relevant, his cognition was stable, and his judgment was fair.[6] (*Id.*). As treatment, Dr. Mitchell continued Janis' prescriptions for Abilify, Klonopin, and Ritalin; increased his dosage of Prozac from 20 to 40 mg daily; and scheduled him for a follow-up visit in six to eight weeks. (*Id.*). Thus, Dr. Mitchell's November 8, 2011 report fails to show any "significant alteration in medication," or the need for a "more structured psychological support system." 20 CFR Pt. 404, Subpt. P, Appx. 1, §12.00(C)(4). Moreover, if Dr. Mitchell believed that Janis was beginning an episode of decompensation, it stands to reason that he would have wanted to see Janis sooner than in six to eight weeks.[7]

Janis points to other medical reports in support of his argument that he suffered a "single and sustained" episode of decompensation, but none of these reports indicate any significant alteration in his medication or a need for more structured psychological support. (Doc. #9 at 12-13). For example, Janis asserts that he "appeared to his psychiatrist [Dr. Mitchell] to be 'much more depressed'" at his next visit to Dr. Mitchell, on December 22, 2011; that he was continuing

---

[6] Dr. Mitchell also observed that Janis was "somewhat disheveled," and his affect was blunted to flat. (Tr. 318). In these respects, however, Dr. Mitchell's observations were not significantly different on November 8, 2011, than they were at prior visits. (*See, e.g.,* Tr. 288 ("somewhat disheveled" with restricted affect on July 6, 2011); 297 ("slightly disheveled" with restricted to blunted affect on August 4, 2011); 314 ("slightly disheveled" on September 9, 2011)).

[7] Indeed, at prior visits in July and August 2011, Dr. Mitchell indicated a desire to schedule follow-up visits at four-week intervals. (Tr. 289, 297). Thus, it appears that Dr. Mitchell did not consider Janis' condition as requiring any greater level of professional attention than he had recommended in prior months. (Tr. 318) (recommending utilizing his therapist only "as motivated.").

to have panic attacks, despite the increase in his Prozac dose; and that he was struggling to sleep and was much more irritable. (*Id.* (citing Tr. 321)). However, Janis' characterization of the record is flawed in one respect, and omits relevant information about Dr. Mitchell's findings. First, to the extent Janis implies that Dr. Mitchell determined Janis was "much more depressed," (*id.*) ("appeared to his psychiatrist to be …"), that implication is inaccurate. The comment Janis is alluding to is found in the "subjective" section of Dr. Mitchell's report, where he is recording Janis' statements, not in its "objective" section, where Dr. Mitchell is recording his own medical conclusions. (Tr. 321). Second, as reflected in the "subjective" section, Janis acknowledged at this visit that the panic attacks were intermittent, and his increased complaints were due at least in part to a dispute about a handyman and a strained abdominal muscle that had limited Janis' ability to exercise. (*Id.*). Third, the record reflects that Dr. Mitchell found that Janis was cooperative, and exhibited "[n]o gross psychotic features…" (*Id.*). Dr. Mitchell also noted: "[Janis'] thought processes are a bit ruminative. Cognitively he's alert, oriented to self, place and time. His concentration is slightly impaired. Memory is adequate. His insight is fair with judgment adequate." (*Id.*). Dr. Mitchell reduced Janis' dosage of Prozac, discontinued his use of Klonopin, increased his Abilify dosage, prescribed Cymbalta and Ativan, and instructed him to return in four to six weeks. (Tr. 321).

At his follow-up visit six weeks later, on February 7, 2012, Janis continued to report feeling depressed, saying that he was getting only four or five hours of "very fragmented" sleep per night. (Tr. 325). However, Dr. Mitchell noted that Janis had "benefited from medications and mental health treatment" and was only occasionally having spontaneous panic attacks. (*Id.*). As treatment, Dr. Mitchell re-started him on Ativan (since Janis had not been taking it); continued his prescriptions for Abilify, Cymbalta, and Ritalin; and instructed him to follow up in

six weeks.  (*Id.*).  Janis also asserts that at his next visit – on March 20, 2012 – he again reported being "consistently depressed," and Dr. Mitchell "again increased his medication."  (Doc. #9 at 12 (citing Tr. 329)).  At this same visit, however, Dr. Mitchell noted that Janis "seem[ed] to be improving a little bit," was not having any "full-blown panic attacks" (just "panic thoughts"), and indicated that he believed the Ativan and Ritalin were helping.  (Tr. 329).  Although Dr. Mitchell did titrate Janis' Cymbalta dosage upward, he continued the rest of his medications and told him to follow up in four to six weeks.  (*Id.*).

Two months later, Dr. Mitchell noted that, instead of increasing his Cymbalta dosage, Janis had *reduced* it on his own because he started to have tremors; as a result, perhaps, his anxiety was "still sporadic," and his depression was worse.  (Tr. 339).  Dr. Mitchell indicated that he would titrate Janis' Cymbalta dosage upward from its lowered amount; continue his prescriptions for Abilify, Ativan, and Ritalin; and start him on Desyrel for insomnia.  (*Id.*).  Janis was again instructed to follow up in four to six weeks.  (*Id.*).  At his next visit, on June 26, 2012, Dr. Mitchell discontinued Janis' usage of Cymbalta, started him on a trial of Celexa, and continued his prescriptions for Abilify, Ativan, and Ritalin.  (Tr. 342).

At a visit on July 24, 2012, Janis continued to have "some panic symptoms," but he denied any major mood swings and said he felt "a little bit more motivated."  (Tr. 344).  Dr. Mitchell observed that Janis appeared to be "somewhat improved" since starting Celexa and continued his medications.  (*Id.*).

As set forth above, Janis' medical records do not show that he experienced repeated episodes where he required increased treatment or a less stressful situation (or a combination of the two).  Although Janis' medications were adjusted between November 2011 and the time of the hearing (in August 2012), the same is true *before* November 8, 2011, the date on which Janis

now alleges that his single, sustained episode of decompensation began.  (*See, e.g.,* Tr. 289 (discontinuing Buspar and starting Klonopin in July 2011); 297 (discontinuing Zyprexa and starting Abilify in August 2011)).  Moreover, not all of the changes to Janis' medications were "significant"; indeed, some of the medications were actually discontinued or decreased after November 8, 2011, which is not suggestive of an episode of decompensation.  (*See, e.g.,* Tr. 321 (decreasing Prozac and discontinuing Klonopin); 342 (discontinuing Cymbalta)).

In addition, Janis does not point to any evidence in the record indicating that Dr. Mitchell – who was responsible for managing Janis' medications during the relevant time period – viewed Janis as suffering from an episode (or episodes) of decompensation.[8]  Indeed, Dr. Mitchell noted in February 2012 that he believed Janis was benefiting from medications and mental health treatment, and the next month, he again noted that Janis seemed to be "improving a little bit." (Tr. 325, 329).  These statements belie an inference that Dr. Mitchell believed Janis was in the midst of a single, sustained episode of decompensation.  And, overall, the fact that Janis was hospitalized twice during a two-month period in 2005, but then did not require hospitalization at any point after he began receiving consistent medication and therapy in 2009, suggests that his condition had stabilized, not that he was suffering a prolonged episode (or episodes) of decompensation.

Janis also asserts that he had difficulties in activities of daily living, social functioning, and maintaining concentration, persistence, or pace during this time period, which provides further evidence that he was suffering from a single, sustained episode of decompensation. (Doc. #9 at 13).  As set forth above, the regulations recognize that, during an episode of

---

[8] The state agency psychologist who reviewed Janis' records also must have concluded that he did not suffer "repeated episodes of decompensation," as she opined that the "paragraph C" criteria were not met.  (Tr. 60).

14

decompensation, an individual might experience "difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR Pt. 404, Subpt. P, Appx. 1, §12.00(C)(4). In this case, however, Janis offers only his own subjective statements – made in his August 2011 Function Report[9] – in support of his argument. (*Id.* (citing Tr. 167-70)). In that report, Janis indicated that he did not spend time with others; did not care for others; and spent his days going for walks, watching television, mowing the lawn, and doing some housework. (*Id.*). The ALJ found that Janis' subjective statements were not entirely credible, however (Tr. 22), and Janis has not challenged that conclusion.[10] Thus, this evidence does not undermine the ALJ's conclusion that Janis did not suffer from repeated episodes of decompensation during the relevant time period and, therefore, did not satisfy the "paragraph C" criteria of Listing 12.04.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion

---

[9] The Court notes that this report was completed *before* Janis' single, sustained episode of decompensation allegedly began. Thus, even taking Janis' statements as true, they do not establish that he began suffering from an episode of decompensation *three months later*, in November 2011.

[10] At any rate, as to Janis' credibility, the ALJ properly noted that his allegations of disability were inconsistent with his reported activities of daily living (including caring for his elderly parents, driving, shopping, and attending church weekly). (Tr. 20, 23). In addition, the ALJ discounted Janis' allegations that he was unable to maintain focus and complete tasks because he was able to attend college classes to obtain his electrician's certificate during the alleged period of disability. (Tr. 22). Finally, the ALJ appropriately questioned Janis' credibility due to his application for and receipt of unemployment benefits under Michigan law. (Tr. 18-19). *See also Luther v. Comm'r of Soc. Sec.*, 2012 WL 3717769, at *8 (E.D. Mich. June 28, 2012) (recognizing that applications for unemployment and disability benefits are inherently inconsistent). Thus, the ALJ's credibility finding is supported by substantial evidence and should not be disturbed.

for Summary Judgment [11] be GRANTED, Janis' Motion for Summary Judgment [9] be

DENIED, and the ALJ's decision be AFFIRMED.


Dated: October 24, 2014                          s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge


## **NOTICE**

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.

Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.


## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record
and any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on October 24, 2014.

                                                 s/Eddrey O. Butts
                                                 EDDREY O. BUTTS
                                                 Case Manager